Troy COLLINS and Jennilu COLLINS
*v.* STATE of Arkansas

CR 83-95                                    658 S.W.2d 877

Supreme Court of Arkansas
Opinion delivered October 24, 1983

454

*Young & Finley,* for appellants.

*Steve Clark,* Atty. Gen., by: *Velda P. West,* Asst. Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. We agreed to review this Court of Appeals decision because the judges were evenly divided, and the search and seizure issue merits our attention.

The trial court decided that a search warrant issued on the basis of information supplied by a confidential informant was not an unreasonable search prohibited by the United States Constitution. The Court of Appeals divided three to three on the issue, resulting in an affirmance of the conviction of Troy and Jennilu Collins for growing marijuana at their home in Newton County, Arkansas. *Collins* v. *State of Arkansas,* 9 Ark. App. 23, 658 S.W.2d 881 (1983). There are other issues in the case but we need only consider the one touching on the validity of the affidavit signed by a deputy sheriff which was the basis for the issuance of the search warrant. The warrant should not have been issued and the evidence produced was inadmissible.

Deputy Sheriff David Decker testified that one of his confidential informants came to him and told him of seeing marijuana plants in Troy Collins' residence. Decker remarked that the time lapse had been too long and unless he knew the plants were still there he could not get a warrant. A week or so later the informant told Decker the plants were still there. Decker prepared an affidavit for a search warrant which is, in pertinent part, reproduced exactly:

That a confidential Informer contacted me and told me he had been at Troy Collin's residence and had seen Marijuana Growing in subject's hom; that my Informer had seen Marijuana Growing before and knows what it is. My informer has proved his reliability in the past with information he gave me on other cases. He is afraid of great bodily harm should his name be used. His information has always proved to be .tue and reliable.

The warrant further recited that the informant was reliable due to "The fact that he has givin us information in the past that has proved out to be true and helped to solve cases." The search warrant was issued by a municipal judge the same date based solely on the affidavit. The search was conducted that evening or the next. Three hundred and forty-seven growing marijuana plants were found in the Collinses' residence, and their trial and conviction resulted.

The warrant certainly contained discrepancies, as the trial court observed, but aside from typographical errors and errors of form, the issue is whether the warrant is so defective as to void it. The Court of Appeals found it valid mainly on the basis that a common sense, practical approach should be taken in such matters.

Recently in *Illinois* v. *Gates*, ___ U.S. ___, 103 S.Ct. 2317 (1983), the United States Supreme Court overruled previous decisions which held warrants obtained on the basis of informants' tips must satisfy a strict "two prong" test. Instead the Court substituted a totality of the circumstances test, the one ordinarily used to determine probable cause in other instances. We have readily accepted the *Gates* decision in *Thompson* v. *State*, 280 Ark. 265, 658 S.W.2d 350 (1983), and have essentially tried to view warrants in a practical way for some time. *See Baxter* v. *State*, 262 Ark. 303, 556 S.W.2d 428 (1977).

While the Supreme Court clearly relaxed the rule on search warrants based on hearsay information supplied by confidential informants, it did not abandon all requirements for certain specific information. Bare conclusory

statements are still insufficient. And while inferences the magistrate may draw are those which a reasonable person could draw, certain basic information must exist to support an inference. All the magistrate had in this case was the affidavit and the information which we have recited. We find one defect that cannot be cured. The affidavit mentions no time during which the criminal activity occurred. This defect could have been cured by the magistrate before he issued the warrant by either taking testimony from the officer and making a record of it, or simply requiring a new affidavit or amendment to the one presented. *See Lunsford* v. *State,* 262 Ark. 1, 552 S.W.2d 646 (1977).

The Court of Appeals found that growing marijuana is an ongoing criminal activity and the magistrate could have concluded that the criminal activity was recently seen by the informant. For that proposition the case of *United States* v. *Johnson,* 461 F.2d 285 (10th Cir. 1972) is cited. However, the affidavit in the *Johnson* case was a detailed affidavit of continuous criminal activity over a period of time, reciting dates, places and separate instances. In *Johnson,* the Court concluded: "[W]here the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant."

It is the uniform rule that some mention of time must be included in the affidavit for a search warrant. *See* 100 A.L.R.2d 525 (1965). The only softening of this position occurs when time can be inferred from the information in the affidavit. For example, where an affidavit recited that the contraband was "now" in the suspect's possession and that the search was urgent, that was found to be adequate to satisfy the time requirement. *Coyne* v. *Watson,* 282 F. Supp. 235 (D.C. Ohio 1967). In another case where the affidavit said that contraband was "recently" seen, coupled with the use of present tense as to the location of the contraband, that was held to be sufficient. *Sutton* v. *State,* 419 S.W.2d 857 (Tex. Crim. 1967). There is no clue whatsoever given in the affidavit in this case of when the informant saw the growing marijuana. Time is crucial because a magistrate must know that criminal activity or contraband exists where the search

is to be conducted at the time of the issuance of the warrant, not that it may have been there weeks or months before. Otherwise, officials could use such information like blank checks to conduct searches at will, contrary to the purpose for which, and certainly not in the way, searches are permitted by our constitution. Searches of persons and places, especially residences, have to be one of the most serious undertakings of the law. And while legal technicalities cannot obstruct the right of the State to maintain order and bring about justice, neither can form be abandoned at the whim of law enforcement officials. Time is also important because we all have the unfettered right to know when we are accused of doing an illegal act. That is not an unreasonable nor technical demand of the law. Before a search is ordered it must be shown or be easily discernible when the contraband was seen or the illegal activity occurred.

We use a practical, common sense approach to examine search warrants but that approach cannot cure omissions of facts that are undisputedly necessary. This is especially true where great leeway is already given to authorities to use undisclosed informants and pure hearsay as a reason to search a person's home.

Reversed and remanded.