Brady Andrew LANGLEY *v.* STATE of Arkansas

CA CR 98-914                                    990 S.W.2d 575

Court of Appeals of Arkansas
Division I
Opinion delivered May 19, 1999

*Hampton, Larkowski & Coleman,* by: *Mark F. Hampton* and *Patrick J. Benca,* Law Student Admitted to Practice Pursuant to Rule XV(E)(1)(6) of the Rules Governing Admission to the Bar of the Arkansas Supreme Court for appellant.

*Winston Bryant,* Att'y Gen., by: *Kelly S. Terry,* Ass't Att'y Gen., for appellee.

JUDITH ROGERS, Judge. Appellant entered a conditional plea of guilty pursuant to Arkansas Rule of Criminal Procedure 24.3(b) to conspiracy to manufacture methamphetamine and possession of methamphetamine with intent to deliver. On

appeal, he argues that the trial court erred in denying his motion to suppress. We agree, and reverse and remand.

Appellant was charged in connection with evidence discovered after a search of a mobile home owned by Patrick Fouse. In a companion case, *Fouse v. State,* 337 Ark. 13, 989 S.W.2d 146 (1999), Fouse also entered a conditional plea of guilty to several charges. In *Fouse,* the Arkansas Supreme Court held that the affidavit for the search warrant, which is the same affidavit and warrant involved in the instant case, did not contain sufficient facts to justify a nighttime search.

Detective David Oser, of the 17th East Judicial District Drug Task Force, presented the affidavit to the municipal judge. In the affidavit, he stated that he had reason to believe that methamphetamine and items used to manufacture methamphetamine were currently being concealed at Fouse's residence. He stated that on November 29, 1997, McRae police officers detected a chemical odor coming from the residence. He stated that he went to the residence at 9:00 p.m. on December 22, 1997, and also detected a very strong odor of ether coming from the residence. Officer Oser also attached to the affidavit a recipe for making methamphetamine, which indicated that ether is used during the active stages of the manufacturing process. He stated that the manufacturing process takes approximately four hours and that the chemicals used in the process are volatile. Officer Oser further stated that Fouse had a prior conviction for delivery of a controlled substance, and had previously associated with other persons who had been sentenced in federal court for conspiracy to manufacture and distribute methamphetamine. Officer Oser averred that there was an imminent danger that the items used to manufacture the methamphetamine and the controlled substance would be removed or destroyed.

The municipal judge issued the warrant, which allowed for execution to take place at any time based on the finding that reasonable cause existed to believe that the objects to be seized were in danger of imminent removal. At 12:20 a.m. on December 23, 1997, officers conducted the search and found evidence of an

active methamphetamine lab, drug paraphernalia, and communication equipment.

Appellant was present in the mobile home at the time of the search; he was sleeping on the couch in the living room of the residence. Arkansas State Trooper Roger Ahlf testified that he conducted a pat-down search of appellant, and subsequently retrieved a clear plastic bag containing what he believed to be methamphetamine.

The trial court found that appellant had standing to challenge the search as an invitee in the home, and denied his motion to suppress. Appellant argues that the trial court erred in its ruling because the affidavit in support of the search warrant failed to justify a nighttime search and because the *Leon* good-faith exception did not apply.

██ ██ It is well settled that an affidavit must set forth a factual basis as a prerequisite to the issuance of a nighttime warrant and that mere conclusions are insufficient to justify a nighttime search. *Langford v. State*, 332 Ark. 54, 962 S.W.2d 358 (1998). Arkansas Rule of Criminal Procedure 13.2(c) provides that before a warrant authorizing a nighttime search is issued, the issuing judicial officer must have reasonable cause to believe that:

> (i) the place to be searched is difficult of speedy access; or
>
> (ii) the objects to be seized are in danger of imminent removal; or
>
> (iii) the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy.

In reviewing whether the requirements of the rule were met, we make an independent determination based upon the totality of the circumstances and reverse the trial court's ruling only if it is clearly against the preponderance of the evidence. *Id.*

In *Fouse*, the supreme court in finding that the instant affidavit failed to justify the nighttime search stated:

> We view these comments by Detective Oser as conclusory and as falling more readily within the *Richardson/Garner* line of cases

where we held that factual support for a nighttime search had not been forthcoming. Nor can we agree with the trial court that a strong odor of ether detected at the Fouse residence at 9:00 p.m., on December 22, 1997, was a reasonable basis for concluding that methamphetamine was to be removed or sold or both within the next four hours and that a nighttime search was justified. We hold that not only was the search warrant deficient under Ark. R. Crim. P. 13.2(c) but that probable cause was lacking to justify a nighttime search.

337 Ark. at 20-21, 989 S.W.2d at 149. *See also Richardson v. State,* 314 Ark. 512, 863 S.W.2d 572 (1993); *Garner v. State,* 307 Ark. 353, 820 S.W.2d 446 (1991).

■ ■ In *United States v. Leon,* 468 U.S. 897 (1993), the Supreme Court held that objective good-faith reliance by a police officer on a facially valid search warrant will avoid the application of the exclusionary rule in the event the magistrate's assessment of probable cause is found to be in error. *See State v. Hart,* 329 Ark. 582, 952 S.W.2d 138 (1997). In determining that the officers in the instant case lacked good faith in executing the search warrant, the court in *Fouse* stated:

> The test under *Leon* is not whether the police officers executing the warrant subjectively believed they were complying with the law. Rather, the test to be applied under *Leon* is an objective standard of what reasonably well-trained police officers would believe is probable cause for a nighttime search.
>
> . . . .
>
> What is required for establishing probable cause for a nighttime search is clear from Ark. R. Crim. P. 13.2(c) and the multiple decisions of this court requiring more than merely conclusory statements. We have held that an objective standard of good faith is not met when a police officer only presents suspicions regarding removal and the municipal judge only repeats the boilerplate language from Rule 13.2(c). Using an objective standard, we conclude that a reasonably well-trained police officer would not have believed that probable cause existed to conduct a nighttime search based on the smell of ether.

337 Ark. at 21-22, 989 S.W.2d at 149-50 (citations omitted).

Pursuant to the supreme court's holding in *Fouse,* we must hold that the affidavit and resulting search warrant in the instant case did not contain sufficient facts to justify the nighttime search pursuant to Rule 13.2(c), that the smell of ether did not constitute sufficient probable cause to justify the nighttime search, and that the officers failed to meet the objective standard of good faith under *Leon.* We reverse and remand for entry of an order consistent with this opinion.

Reversed and remanded.

GRIFFEN and JENNINGS, JJ., agree.