Charles Leon WEATHERFORD *v.* STATE of Arkansas

CA CR 05-364 216 S.W.3d 150

Court of Appeals of Arkansas
Opinion delivered October 26, 2005

[Rehearing denied November 30, 2005.]

*John W. Settle*, for appellant.

*Mike Beebe*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., and *Stephanie Gosnell*, Law Student Admitted to Practice Pursuant to Rule XV of the Rules Governing Admission to the Bar of Arkansas under supervision of *Darnisa Johnson*, Deputy A'tty Gen., for appellee.

KAREN R. BAKER, Judge. Appellant Charles Weatherford was arrested by the Fort Smith Police Department on December 30, 2003, and charged with possession of methamphetamine with intent to deliver, possession of drug paraphernalia, and simultaneous possession of drugs and a firearm. Appellant filed a motion to suppress the evidence seized, arguing that information provided by an informant was overly vague and insufficiently detailed, and also that the informant did not meet the legal requirements for reliability. The trial court denied the motion and the appellant entered a conditional plea of nolo contendere. Appellant was found guilty and sentenced to ten years in the Arkansas Department of Correction with an additional suspended term of ten years. We find no error by the trial court and affirm.

An appellate court conducts a de novo review of a denial of a motion to suppress evidence based on a totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Davis v. State*, 351 Ark. 406, 413, 94 S.W.3d 892, 896 (2003).

The trial court judge held a hearing following the appellant's motion to suppress in which the State presented two witnesses —

Detective Barnett of the Fort Smith Police Department's Vice-Narcotics unit and Investigator Reese of the Twelfth-Twenty-First Judicial District Drug Force.

Detective Barnett testified that Investigator Reese contacted him prior to the appellant's arrest and advised him that there was reliable information from a confidential informant that the appellant was at Justin Burns's body shop in possession of methamphetamine, ephedrine, and a gun. Barnett drove to the location in an unmarked vehicle to assist Reese and began surveillance. Barnett testified that he was given a description of the vehicle and trailer the appellant would be driving, which he subsequently observed leaving the location under surveillance. Barnett was in contact with Reese by cell phone during the surveillance and notified him that the appellant was leaving the body shop. Based on his contact with Reese and observation of the vehicle and trailer as described by the informant, Barnett contacted a marked police vehicle to conduct a traffic stop of appellant's vehicle.

Barnett frisked the appellant and found a glass pipe of the type commonly used to smoke methamphetamine and placed him under arrest. Additional pipes, a small quantity of methamphetamine, and a large sum of cash were found on the appellant following his arrest. During this search Barnett asked the appellant if there was a gun in the vehicle, and the appellant said that there was a gun located in his briefcase. In the course of his inventory of the vehicle, Barnett found the gun, five bags of methamphetamine, and digital scales in the briefcase. There was also a gym bag found in the vehicle that contained two large bags of powder with a strong odor that Barnett surmised was Acetone — a solvent often used to break down pills containing pseudoephedrine or ephedrine for the manufacture of methamphetamine.

Investigator Reese testified that in the course of his narcotics duties in Sebastian and Crawford counties he was contacted by a police officer who had contact with an informant who had voluntarily brought information to his attention. Although Reese knew the informant by name, the informant had not provided Reese with information previously. The police officer brought the informant to Reese's office, and Reese conducted an interview with him that Reese described as "extensive" and that lasted over an hour. Reese testified that his personal knowledge previously acquired through narcotics investigations and intelligence corroborated the information that the informant provided during the interview. Specifically, Reese testified that Justin Burns's body

shop was a location known for criminal activity and Justin Burns had confessed to producing methamphetamine. Reese additionally testified that he was also able to independently verify the informant's description of the vehicle and the appellant's methods of operation.

On December 30, 2004, Reese began surveillance of the location where the informant told him that the appellant would be located, and observed the trailer but not the vehicle. At that time Reese contacted the informant, who stated that he had been at the location and that the appellant's vehicle was inside, and also that the appellant was preparing to leave. The informant verified that there was a gun and methamphetamine in the appellant's vehicle.

At some point after this conversation with the informant Reese had to leave the scene temporarily to meet with the informant and Detective Barnett, and the Fort Smith Police Department took over the surveillance. Reese notified the Fort Smith police that the vehicle was inside and that the appellant was preparing to leave. Shortly thereafter Reese was told that the vehicle was backing out of the location and hooking up to the trailer. Reese, who met with the informant for approximately ten minutes, told the Fort Smith police that he was at too great a distance away to make the traffic stop and instructed them to do so. Reese testified that he was confident of the reliability of the informant, because the information provided had all been previously proven to be truthful and corroborated by his personal knowledge and narcotics intelligence. Therefore, he had no reservations in ordering the traffic stop of the appellant.

At the conclusion of testimony by Detective Barnett and Investigator Reese the trial judge determined that the informant and information he provided was reliable based on the totality of the circumstances. The trial judge particularly noted that the informant provided the information voluntarily, and that there was subsequent contact between the police and the informant during which the informant stated that he had again seen the items to be found in the appellant's vehicle through personal observation. The appellant's motion to suppress was denied. Appellant contends that the trial court's determination that the informant was reliable was unsupported by testimony or Arkansas law and, therefore was in error.

■ The appellant mistakenly relies on *Kaiser v. State*, 296 Ark. 125, 752 S.W.2d 271 (1988), to support his argument. In *Kaiser*, the Arkansas Supreme Court addressed the question of whether the State presented evidence sufficient to support reason-

able suspicion to stop a vehicle that was suspected of carrying marijuana, a gun, and a large amount of cash. The stop was based on a tip from the Missouri State Police who told the Randolph County Sheriff's Office that the information was provided by a reliable informant. *Id.* The supreme court stated that while the Arkansas authorities "did not act improperly in stopping Kaiser's car on the basis of the information from the Missouri State Police" there had to have been reasonable suspicion by the Missouri State Police based on the reliability of the informant. *Id.* at 127-128, 752 S.W.2d at 273. The *Kaiser* court found that while the informant may have indeed been reliable, there was no testimony to support that conclusion. *Id.* at 129, 752 S.W.2d at 274. Here, in contrast to *Kaiser*, there was testimony provided by Investigator Reese that allowed the trial court to determine that the informant was sufficiently reliable, including his independent corroboration of the vehicle's location, specific description, and the appellant's method of operation.

 Reliability of informants is determined by a totality of the circumstances analysis that is based on a three-factored approach the Arkansas Supreme Court adopted in *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998) (citing *State v. Bybee*, 131 Or. App. 492, 884 P.2d 906 (1994)). The factors are: 1) whether the informant was exposed to possible criminal or civil prosecution if the report is false; 2) whether the report is based on the personal observations of the informant; 3) whether the officer's personal observations corroborated the informant's observations. *Id.* at 118, 959 S.W.2d at 741. The *Frette* court examined the satisfaction of these factors:

> The first factor is satisfied whenever [the informant] gives his or her name to authorities or if the person gives the information to the authorities in person. With regard to the second factor, "an officer may infer that the information is based on the informant's personal observation if the information contains sufficient detail that 'it [is] apparent that the informant had not been fabricating [the] report out of whole cloth . . . [and] the report [is] of the sort which in common experience may be recognized as having been obtained in a reliable way.' " The third and final element may be satisfied if the officer observes the illegal activity or finds the person, the vehicle, and the location as substantially described by the informant.

*Id.* (quoting *Bybee, supra*).

The *Frette* court termed this explanation of the satisfaction of the factors a "useful analytical framework" and applied them to determine that an informant's tip "carried with it sufficient indicia of reliability to justify an investigatory stop." *Frette* at 118, 959 S.W.2d at 741. Because the informant in *Frette* was identifiable and thus subject to prosecution for making a false report, he was found to have greater reliability and satisfied the first factor. The informant's personal observation of the criminal activity gave him a reliable basis of knowledge and satisfied the second factor. The third factor was satisfied when the informant's information was corroborated by a law enforcement officer. *Id.* at 121, 959 S.W.2d at 743.

■ Under the totality of the circumstances in the instant case — and applying the factors to determine sufficient indicia of reliability of an informant — we hold that the trial court committed no error in denying the appellant's motion to suppress. Contrary to the appellant's argument, there were sufficient facts to support the reliability of the informant. The reliability of the informant was established by the fact that he was identifiable and therefore subject to prosecution for making a false report. Additionally, Investigator Reese interviewed the informant personally for over an hour in order to determine his reliability. The information was based on personal knowledge and observation of the informant — observation which was verified again by Investigator Reese during the surveillance of the appellant and just prior to his arrest. Finally, Investigator Reese testified that he was able to corroborate information that the informant provided based on narcotics investigations and intelligence as well as with his own personal knowledge.

Based on the testimony of law enforcement officers involved in the appellant's arrest and applying that testimony to the factors to provide sufficient indicia of reliability of an informant, we find that the trial court did not err in its denial of the appellant's motion to suppress. We therefore affirm.

GLADWIN and ROBBINS, JJ., agree.