Cite as 2020 Ark. App. 482

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CR-20-199

| | | |
|---|---|---|
| TOMMY F. HAMILTON | | **Opinion Delivered:** October 21, 2020 |
| | APPELLANT | |
| | | APPEAL FROM THE HEMPSTEAD COUNTY CIRCUIT COURT [NO. 29CR-19-39] |
| V. | | |
| | | HONORABLE RANDY WRIGHT, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

**PHILLIP T. WHITEAKER, Judge**

Appellant Tommy Hamilton was convicted of multiple drug-related offenses by a Hempstead County jury and was sentenced to an aggregate of 660 months' imprisonment. Hamilton appeals this conviction and argues as his sole issue on appeal that the circuit court erred in denying his motion to suppress. We affirm.

## I. *Factual and Procedural Background*

In December 2018, agents with the Eighth North Task Force used a confidential informant to conduct controlled buys of methamphetamine from Hamilton. On three separate occasions,[1] the confidential informant arranged to purchase methamphetamine from Hamilton at his home located at 709 Harris Street, Hope, Arkansas. On each occasion, Task Force Agents Brown and Rowe met the informant, conducted a personal and vehicular

---

[1]The buys occurred on December 4, December 6, and December 16, 2018.

search of the informant, equipped the informant with recording equipment and purchase money, and conducted visual surveillance of the informant's travel to, and exit from, Harris Street. After the confidential informant's exit from Harris Street, the agents met the informant at a staging area where they retrieved the methamphetamine and the recording equipment from the informant. On each occasion, the informant advised that the methamphetamine was purchased from Hamilton, and the agents were able to verify this by viewing the video recording of the event. The agents, however, were not able to conduct visual surveillance of Hamilton's home at 709 Harris Street on any of the three occasions because Harris Street is a dead end.

Following these controlled buys, Agent Brown completed an affidavit for search warrant. In his affidavit, Agent Brown outlined the events surrounding the three separate controlled buys, described the house at 709 Harris Street, and stated that there was reasonable cause to believe that controlled substances and other contraband materials were concealed therein.

On the basis of this affidavit, a Hempstead County circuit judge signed a search-and-seizure warrant authorizing the search of 709 Harris Street. Agent Brown executed the warrant and submitted a search-warrant return listing an inventory of property taken pursuant to the search. The Hempstead County Prosecuting Attorney's Office then filed a criminal information against Hamilton charging him with simultaneous possession of drugs and firearms, possession of methamphetamine with purpose to deliver, two counts of using or possessing paraphernalia to manufacture methamphetamine, maintaining a drug premises,

possession of a firearm by certain persons, possession of drug paraphernalia to ingest or inhale a controlled substance, and theft by receiving.[2]

Hamilton filed a motion to suppress the evidence seized as a result of the execution of the search warrant. In his motion, Hamilton argued that the search of his home and seizure of evidence was "clearly illegal in that the Affidavit for Search and Seizure Warrant fails to set forth any facts to establish probable cause for a search or for issuance of the . . . warrant." Moreover, he asserted that the "facts listed to establish probable cause for the search warrant are tainted as they rely on confidential-informant knowledge and that informant's veracity, reliability, and basis of knowledge have not been factored into the information obtained to get the search warrant."[3]

The circuit court held a hearing on Hamilton's suppression motion. At the hearing, the court heard only arguments of counsel because neither party called witnesses. The court thereafter denied Hamilton's motion to suppress in a ruling from the bench.

The matter proceeded to a jury trial the next day. The jury convicted Hamilton of simultaneous possession of drugs and firearms, possession of methamphetamine with purpose to deliver, use or possession of drug paraphernalia to manufacture methamphetamine, and

---

[2]Each charge was accompanied by a "large habitual" enhancement because Hamilton had four or more prior felony convictions.

[3]Hamilton's motion also argued that the return was fraudulent because it falsely stated that a copy of the warrant had been left at the residence and that the court should suppress incriminating statements he allegedly made at the time of the search. These arguments, however, are abandoned on appeal.

possession of drug paraphernalia to ingest or inhale.[4] Hamilton received an aggregate sentence of fifty-five years in the Arkansas Department of Correction. This appeal followed the timely filing of Hamilton's notice of appeal.

II.  *Applicable Rule of Criminal Procedure and Standard of Review*

Arkansas Rule of Criminal Procedure 13.1(b) (2019) sets out the requirements for an application for a search warrant as follows:

> The application for a search warrant shall describe with particularity the persons or places to be searched and the persons or things to be seized, and shall be supported by one (1) or more affidavits or recorded testimony under oath before a judicial officer particularly setting forth the facts and circumstances tending to show that such persons or things are in the places, or the things are in possession of the person, to be searched. If an affidavit or testimony is based in whole or in part on hearsay, the affiant or witness shall set forth particular facts bearing on the informant's reliability and shall disclose, as far as practicable, the means by which the information was obtained. An affidavit or testimony is sufficient if it describes circumstances establishing reasonable cause to believe that things subject to seizure will be found in a particular place. Failure of the affidavit or testimony to establish the veracity and bases of knowledge of persons providing information to the affiant shall not require that the application be denied, if the affidavit or testimony viewed as a whole, provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure will be found in a particular place.

The issuing magistrate's task is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him or her, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Coggin v. State*, 356 Ark. 424, 156 S.W.3d 712 (2004).

Our standard of review for a circuit court's decision to grant or deny a motion to suppress requires us to make an independent determination based on the totality of the

---

[4]The jury acquitted Hamilton of maintaining a drug premises. The State had previously nolle prossed the theft-by-receiving count and severed the felon-in-possession charge.

4

circumstances, to review findings of historical fact for clear error, and to determine whether those facts give rise to reasonable suspicion or probable cause. *Simmons v. State*, 2009 Ark. App. 705. Our review of the probable cause for the issuance of the warrant is confined to the information contained in the affidavit because that was the only information before the magistrate when he or she issued the warrant. *Rasmussen v. State*, 2009 Ark. App. 586. Our duty is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Coggin*, *supra*.

## III. *Analysis*

On appeal, Hamilton contends that there is nothing in the affidavit showing the reliability of the confidential informant because the informant did not link Hamilton or the drug buys to the place to be searched—specifically, 709 Harris Street. His argument is broken down into several subpoints. First, he maintains that the affidavit failed to establish the veracity and reliability of the confidential informant because the informant did not link him or the drug buys to the place to be searched. Second, he argues that the affidavit failed to provide a link or nexus to the specific address to be searched, 709 Harris Street, and the issuing magistrate and the circuit court could not assume or infer that the buys occurred there or that Hamilton lived at 709 Harris Street. Finally, Hamilton contends that the good-faith exception to the exclusionary rule does not apply.

## A. The Confidential Informant's Reliability and Veracity

In his first subpoint, Hamilton attacks the confidential informant's reliability and veracity. Our court has held that a search warrant is flawed if there is no indicia of the confidential informant's reliability. *Fouse v. State*, 73 Ark. App. 134, 43 S.W.3d 158 (2001).

5

Determining indicia of reliability is not an exact science, and we have held that there is no fixed formula for determining an informant's reliability. *Haley v. State*, 2017 Ark. App. 18, at 4, 509 S.W.3d 692, 694 (citing *Heaslet v. State*, 77 Ark. App. 333, 345, 74 S.W.3d 242, 249 (2002)). While there is no fixed formula, however, we have set forth factors to be considered in making such a determination, including whether the informant's statements are (1) incriminating, (2) based on personal observations of recent criminal activity, and (3) corroborated by other information. *Id.* We have further held that the conclusory statement, "reliable informant," is not sufficient to satisfy the indicia requirement. *Id.* A failure to establish the veracity and bases of knowledge of the informant is not a fatal defect, however, if the affidavit viewed as a whole "provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure will be found in a particular place." *Id.* at 3, 509 S.W.3d at 694 (citing Ark. R. Crim. P. 13.1(b)).

In the circuit court, Hamilton filed a motion to suppress arguing that "the facts listed to establish probable cause for the search warrant are tainted as they rely on confidential informant knowledge and that informant's veracity, reliability, and basis of knowledge have not been factored into the information obtained to get the search warrant." At the hearing on his motion, Hamilton argued that the validity of the controlled buys could not be substantiated because the reliability of the informant was unknown. The State responded that Agent Brown reviewed the videos from each transaction, and the contents of the videos corroborated what the informant described; therefore, the State argued, the informant's reliability and veracity could be established. The court agreed with the State. The court noted that the affidavit for the warrant "necessarily addresses what an officer knows about a

particular situation and sworn under oath to present the affidavit so the court may . . . issue a search warrant, which occurred here. Part of any affidavit includes what the officer observed. Can be observed by what they have watched live, video, wherever, according to what type of case it is."

On appeal, Hamilton argues that the affidavit in this case was insufficient because the affiant did not watch the informant go into any specific house on Harris Street in any of the three controlled buys but only watched the informant drive onto Harris Street. He contends that the "lack of an actual visual of the confidential informant entering or leaving the target address," compounded by the lack of proof of reliability of the informant, renders the affidavit fundamentally flawed. Thus, Hamilton's argument regarding the reliability of the informant is intertwined with his complaint about the lack of visual surveillance from the agents.

It is difficult to discern whether this specific argument concerning the informant's veracity was made below. At the hearing on the motion to suppress, Hamilton noted that the officers did not watch the confidential informant actually enter the house described in the affidavit; therefore, he contended, probable cause for the warrant was lacking. Regardless, when viewed as a whole, Agent Brown's affidavit provided a substantial basis to believe that drugs and other contraband would be found at Hamilton's residence. We acknowledge that the affidavit does contain the conclusory phrase "reliable informant," but it goes further and presents information that satisfies the factors set forth above to be utilized in determining the reliability of the informant.

First, the informant provided a clearly incriminating statement: he or she purchased methamphetamine from Hamilton. *See, e.g.*, *Wagner v.* State, 2010 Ark. 389, 368 S.W.3d 914 (informant admitted to affiant that he or she had bought drugs from the defendant in the past). Second, the informant provided a statement based on personal observations—in fact, not merely observations of, but participation in, recent criminal activity. *See, e.g.*, *Tankersley v. State*, 2015 Ark. App. 37, 453 S.W.3d 699 (informant's statement to police was reliable because he personally observed the illegal activity). And third, Agent Brown was able to corroborate the information provided by the video recording, which recorded the actual transaction on all three occasions. *See, e.g.*, *Weatherford v. State*, 93 Ark. App. 30, 216 S.W.3d 150 (2005) (holding that the third factor was satisfied when the informant's information is corroborated by a law enforcement officer). Accordingly, we conclude that there was enough evidence to provide sufficient indicia of the reliability of the informant even though the officers did not observe the informant walk into the house at 709 Harris Street.

B. Failure of the Informant to Link the Drug Buys to a Specific Address

In his second subpoint, Hamilton argues that there was insufficient "linking" evidence to prove a nexus between the drug sales and the house at 709 Harris Street, and the issuing magistrate thus had to speculate that the controlled buys took place there. We conclude that this specific argument was not made at the circuit court level, either in Hamilton's written motion to suppress or in his arguments at the suppression hearing.

In his motion to suppress, Hamilton asserted that the search was illegal because the affidavit failed to set forth facts to establish probable cause for the issuance of the warrant

8

and that the facts allegedly supporting probable cause were "tainted as they rely on confidential informant knowledge and that informant's veracity, reliability, and basis of knowledge have not been factored into the information obtained to get the search warrant." At the hearing, Hamilton argued generally that the officers did not personally observe the informant going into the house. At no point, however, did he raise or develop the specific arguments that are presented on appeal, i.e., that the confidential informant failed to link the drug buys or Hamilton to a particular address.

Our supreme court has held that an issue must be raised to the circuit court to be preserved for appellate review. *Eastin v. State*, 370 Ark. 10, 257 S.W.3d 58 (2007) (finding arguments unpreserved for review when those arguments—that the affidavit disclosed no specific items to be found on the property, contained an insufficient time frame, and alluded to nothing more than a bare assertion of past criminal conduct—were never raised to the circuit court). A party is bound by the nature and scope of the objections and arguments made at trial and may not enlarge or change those grounds on appeal. *Daniels v. State*, 2019 Ark. App. 507, 588 S.W.3d 407. In this point on appeal, Hamilton is clearly enlarging on the arguments made in the circuit court, and we therefore do not consider them on appeal.

C. Good-Faith Exception

Finally, Hamilton argues that the good-faith exception to the exclusionary rule should not apply. In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court held that an officer's objective, good-faith reliance on a facially valid warrant will avoid application of the exclusionary rule in the event that the magistrate's assessment of probable cause is found to be in error. When, however, there is no defect in the warrant, there is no

need to discuss hypothetically whether the good-faith exception would have applied. *Townsend v. State*, 68 Ark. App. 269, 277, 6 S.W.3d 133, 137 (1999). Here, as discussed above, the magistrate's assessment of probable cause was not in error; therefore, we do not address Hamilton's argument on this point.

Affirmed.

VIRDEN and GLADWIN, JJ., agree.

*Devon Holder*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.